IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEANNA WATROUS, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. TJS-24-2076 |
| AIRTEC, INC., | * | |
| Defendants. | * | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending before the Court is Defendant AIRtec's Motion for Summary Judgment ("Motion") (ECF No.29).[1] Having considered the submissions of the parties (ECF Nos. 29, 32, 33), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, the Motion will be **GRANTED**.

**I. Background[2]**

**A. Factual Background**

Plaintiff Deanna Watrous ("Watrous") was hired as AIRtec's Flight and Maintenance Specialist for their Panama Program in November 2021. Ex. 6, J.R. at 193. Watrous's position, which she began on January 1, 2022, required her to support the Flight Operations Department

---

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF Nos. 27 & 28.

[2] Unless otherwise noted, the following facts are not in dispute. To the extent that they are in dispute, they will be viewed in the light most favorable to Plaintiff, as the non-moving party. All references to exhibits herein will cite to the Motion for Summary Judgment Joint Record provided by the parties ("J.R.").

under the direction of her husband, Chief Pilot Donald Watrous, and to support the Maintenance Department under the direction of the Director of Maintenance, David Counts ("Counts"). *Id.*; ECF No. 31-1 at 4. Watrous's immediate supervisor was Director of SOUTHCOM Program Brian Wilkinson ("Wilkinson"), who was not stationed in Panama. *Id.*

### 1. AIRtec's Concerns With Watrous's Performance

During Watrous's employment with AIRtec, her supervisors raised concerns with her work performance. Counts and Wilkinson's primary concern was that Watrous frequently left the hangar to work from home without permission and delegated others to perform tasks that required her to be physically present. ECF No. 29-1 at 13. On April 22, 2022, Wilkinson and Counts set up a Zoom meeting with Watrous and human resources personnel to discuss their concerns.[3] They gave her a set schedule during which they expected her to be physically present and provided her an additional desk in the Logistics Office to use on-site. *Id.* During the meeting, Watrous showed reluctance to continue her duties supporting the Maintenance department. *Id.* The same day, AIRtec's then-Director of Human Resources Kelly Beavers ("Beavers") had a call with Watrous. *Id.* During the call with Beavers, Watrous again indicated that she did not wish to perform her Maintenance duties because she wanted more flexibility in her schedule. *Id.*

After their call, Beavers emailed AIRtec leadership and described Watrous's attitude as "very toxic" and said she is "hard to communicate with." Ex. 17, J.R. at 247-50. AIRtec CEO Tom

---

[3] Watrous alleges that her supervisors "did not provide any direction to [her] regarding her work schedule" prior to the April meeting. ECF No. 31-1 at 5.

In addition to concerns about absenteeism, Watrous's supervisors noticed that Watrous failed to timely complete work and failed to follow proper protocol when completing tasks. ECF No. 29-1 at 12-13; Ex. 14, J.R. at 214-15; Ex. 15 at 217-19. During discovery, AIRtec also learned that Watrous was impermissibly working secondary employment while she was employed by AIRtec. ECF No. 29-1 at 14.

Jarboe "Jarboe") responded that "[c]ontinuing to accommodate this will only cause more friction and potential of attrition of others for having to deal with it." *Id.*

On April 29, 2022, AIRtec Human Resources Specialist Cynthia Leitzel held a call with Watrous, where Watrous indicated she would continue to support Maintenance Operations. ECF No. 29-1 at 14-15. During that call, Watrous also expressed concern about collaborating and communicating with AIRtec's Logistics Manager, Osvaldo Guerra ("Guerra"). *Id.*

### 2.  Watrous's Complaints About Guerra

Some of the tasks Counts assigned to Watrous in support of the Maintenance Department required Watrous to work with Guerra. Watrous alleges that Guerra harassed her and created a hostile work environment. ECF No. 8 ¶ 51-55.

The first time Watrous complained to her supervisors about Guerra was on March 1, 2022, when she emailed Counts that Guerra was not providing her instructions on a certain inventory system. ECF No. 31-1 at 7. In response, Counts held a meeting between himself, Guerra, and Watrous, where Guerra explained that the system had not yet come online, so he could not instruct her on it because it did not yet exist. ECF No. 31-1 at 6-7; ECF No. 29-1 at 7-8.

On March 4, 2022, Watrous emailed Counts that she was "getting the run around" on her messages to Guerra for office supplies (i.e., not getting responses from him). Ex. 10, J.R. at 207. Counts explained that Guerra had other responsibilities that took priority over responding to Watrous's individual supply requests. ECF No. 31-1 at 7; ECF No. 29-1 at 12. Watrous continued to email Guerra supply requests, sometimes several times a day. ECF No. 29-1 at 12. On April 16, 2022, Guerra asked Watrous via email to send him one list per week of all her purchasing requests. Guerra also sent an email on April 18, 2022 to all employees working at the Panama site (including

all of Watrous's male co-workers), outlining a uniform process for requesting supply items. ECF No. 29-1.[4]

The situation between Watrous and Guerra escalated on May 3, 2022. A few days earlier, a desk for Watrous had been placed in the Logistics Office. Ex. 29-1 at 15. Guerra and the IT team originally placed it against a wall. According to Guerra, this location was chosen due to the location of electricity ports. *Id.* The next day, Watrous moved her desk to a different location in the office. *Id.* Meanwhile, Watrous and Guerra were at odds over the protocol for maintaining the Logistics Office security. Guerra, who "is individually responsible for the security and accurate accounting of the aeronautical parts, tools, and components stored within the storeroom and Logistics Office," is the only person who had a personal set of keys to the Logistics Office. *Id.* at 9. All other AIRtec employees had to use the key located in the Maintenance Office. When Watrous requested her own set of keys, Guerra refused. Watrous alleges that being required to retrieve a key from the Maintenance Office to secure the Logistics Office when she leaves—particularly when she is only leaving to use the restroom—is harassment. Ex. 20, J.R. at 256. She also notes that on one occasion, when she returned to the Logistics Office after putting the key back in the Maintenance Office, Guerra was in the hangar and had left the Logistics Office unlocked, which she views as a double standard. *Id.* ECF No. 31-1 at 9.

It is against this backdrop that Watrous came into work on May 3, 2022 to find that Guerra had returned her desk to its original position facing the wall. ECF No. 31-1 at 9. Watrous considered the position that Guerra chose to be "demeaning" and "inappropriate," and she believed that the issue regarding outlet placement could be solved by using extension cords. Ex. 20, J.R. at

---

[4] Watrous identified Guerra's April 16, 2022 and April 18, 2022 emails as incidents of harassment Guerra subjected her to. Ex. 2, Watrous Dep. J.R. at 81-82.

256. Guerra and Watrous had a heated argument about the placement of Watrous's desk, Guerra's refusal to give Watrous a set of keys, and Watrous's refusal to lock the Logistics Office when she left. ECF No. 31-1 at 9. Their argument allegedly culminated in Watrous storming out and slamming the door twice. ECF No. 29-1 at 12.

Later that day, Watrous sent an email to Wilkinson, Counts, Beavers, and Leitzel with the subject line "Need resolution for incredibly uncomfortable work environment." Ex. 20, J.R. at 256. In the email, Watrous described her conflicts with Guerra regarding the desk configuration and locking the Logistics Office door. *Id.* She complained that Guerra "has stonewalled me, lied to me, ignored my emails and now has harassed me such that I am required to lock the door, but the requirement to keep the materials secure doesn't apply to him." *Id.* Watrous's May 3, 2022 email was not treated as a complaint of sexual harassment, and no investigation followed. Guerra also sent an email to the supervisory staff that day describing that day's conflict from his point of view. Ex. 19, J.R. at 254.

### 3. Watrous's Termination

On May 4, 2022, Watrous did not report to work. ECF No. 29-1 at 17. That same day, AIRtec terminated Watrous's employment. AIRtec alleges that she was terminated "due to the ongoing issues surrounding Watrous's work performance, her maintained reluctance to perform her maintenance duties in the manner requested of her, her several requests to reduce her assigned duties and go part-time supporting only Flight Ops supervised by her husband, inability to work collaboratively with Guerra in the Logistics Department, and insubordination with respect to securing the Logistics Office." *Id.* at 17-18. However, at the time she was terminated, AIRtec did not provide a reason for her termination other than "at will." ECF No. 31-1 at 10.

On May 5, 2022, Watrous's responsibilities were temporarily reassigned to AIRtec employee Maria Alejandra Barragan Beltran ("Beltran"). ECF No. 29-1 at 18. The position was permanently filled on June 13, 2022 by Natalia Gonzales ("Gonzales"), who still holds the position. *Id.* Like Watrous, Gonzales has a desk in the Logistics Office and does not have a personal key to the office. *Id.* Beltran and Gonzales are both females. *Id.*

### B. Procedural History

On August 23, 2022, Watrous filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission for Civil Rights, alleging that AIRtec discriminated against her based on her sex. ECF No. 8 ¶ 6. On March 29, 2023, Watrous filed a complaint in state court, alleging violations of the Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-601 *et seq.*, ("MFEPA"). ECF No. 1. Also on March 29, 2024, the EEOC issued a notice of right to sue. ECF No. 8 ¶ 7. On June 27, 2024, Watrous amended her complaint to add claims under Title VII of the Civil Rights Act of 1964, 42 U.S. C. § 200e *et seq*. ("Title VII"), and AIRtec removed the case to federal court. ECF No. 8.

In Counts I and IV, Watrous alleges that AIRtec discriminated against her based on her sex, in violation of the MFEPA and Title VII. *Id.* ¶¶ 89-100 (MFEPA) & 113-123 (Title VII). In Counts II and V, Watrous alleges that AIRtec retaliated against her for engaging in protected activity "when she complained to her supervisors and human resources representatives about being subjected to differential treatment at the hands of her male supervisor," in violation of the MFEPA and Title VII. *Id.* ¶¶ 101-106 (MFEPA) & 124-129 (Title VII). In Counts III and VI, Watrous alleges that she was subjected to harassment and a hostile work environment based on her sex, in violation of the MFEPA and Title VII. *Id.* ¶¶ 107-112 (MFEPA) & 130-135 (Title VII).

AIRtec moves for summary judgment as to all counts. ECF No. 29.

## II. Discussion

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict for the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Yet the "mere existence of a scintilla of evidence in support of the [opposing party's] position" cannot defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from those facts, must be viewed in the light most favorable to the opposing party. *Scott*, 550 U.S. at 378; *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party may not rest on the mere allegations or denials of its pleading but must cite "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B. Methods of Proof for Discrimination and Retaliation

A plaintiff may establish a claim of employment discrimination under Title VII through one of two avenues of proof. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007); *see also Foreman v. Weinstein*, 485 F. Supp. 2d 608, 612 (D. Md. 2007).

First, a plaintiff may establish through direct or circumstantial evidence that her race, color, religion, sex, or national origin was a motivating factor in her employer's adverse employment action. *Holland*, 487 F.3d at 213; *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (describing the first avenue of proof as using "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue.").

Second, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff carries the initial burden to establish a prima facie case for discrimination. *Id.* If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate nondiscriminatory reason for [the adverse employment action]." *Id.* If the defendant articulates such a reason, the burden shifts back to the plaintiff show that the reason supplied by the defendant is pretextual, or to provide other evidence of discrimination. *Id.* at 804.

The *McDonnell Douglas* burden-shifting framework is also available for claims of retaliation under Title VII. *Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 250-51 (4th Cir. 2015). Courts apply Title VII precedent, including the burden-shifting framework, to employment discrimination claims brought under the MFEPA as well. *Passwaters v. Wicomico Cnty.*, No. RDB-18-2923, 2019 WL 6341623, at *25 (D. Md. Nov. 27, 2019) ("The same framework governs Plaintiffs' Title VII and S.G. § 20-606 claims.").

8

### C.    Discrimination Claims

Watrous alleges that AIRtec discriminated against her based on her sex, in violation of the MFEPA, Md. Code, State Gov't § 20-601 (Count I) and Title VII, 42 U.S.C. § 2000e, *et seq.* (Count IV).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The MFEPA likewise states that "[a]n employer may not fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of the individual's race, color, [or] national origin." Md. Code, State Gov't § 20-606(a)(1)(i).

Watrous does not present direct evidence of sex discrimination. She therefore must rely on the *McDonnell Douglas* burden-shifting framework to survive a motion for summary judgment. A prima facie case for employment discrimination under Title VII and the MFEPA requires a plaintiff to assert facts that establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d. 187, 190 (4th Cir. 2010) (describing the elements of a prima facie case of discrimination under Title VII); *Passwaters v. Wicomico Cnty.*, No. RDB-18-2923, 2019 WL 6341623, at *25 (D. Md. Nov. 27, 2019) (using the same elements in analyzing plaintiff's prima facie case under the MFEPA as under Title VII).

Watrous, a woman, is a member of a protected class, and she was subject to adverse employment action when she was terminated by AIRtec. The parties dispute whether Watrous has

plausibly established (1) satisfactory job performance and (2) different treatment from similarly-situated employees outside of her protected class.

A showing of satisfactory job performance requires Watrous to demonstrate that she was meeting her employer's "legitimate expectations." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). This may be shown, for example, through prior job performance evaluations, comments from supervisors on work performance, bonuses, and similar indicia. *See, e.g.*, *id.* (positive comments from supervisor and history of bonuses); *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019) (recent comments from supervisor that employee had "nothing to worry about" in upcoming performance evaluation); *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 256 (4th Cir. 2025) (positive testimony from multiple supervisors and evidence showing that criticisms of employee's performance were "baseless").

As Flight & Maintenance Records Specialist, Watrous was expected to devote approximately 50% of her time to supporting Flight Operations and 50% to supporting Maintenance. Ex. 2, J.R. at 87 (Watrous Dep. 107:9-13); Ex. 6, J.R. at 193-195. AIRtec alleges that Watrous did not satisfactorily perform her maintenance duties. Specifically, it alleges that Watrous frequently worked from home without authorization, delegated others to perform her job tasks that required her to be physically present, and did not complete all assigned duties timely, accurately, and according to protocol. ECF No. 29-1 at 12-13; Ex. 4, J.R. at 159 (Wilkinson Dep. 48:4-49:18; 70:3-9) (Watrous was frequently absent from the workplace when expected); Ex. 14, J.R. at 214-15 (Watrous failed to timely complete work); Ex. 15, J.R. at 217-19 (Watrous revised the flight log against protocol); Ex. 2, J.R. at 77 (Watrous Dep. 65:1-68:12) (agreeing that she asked others to perform part of her job duties when she was working from home). During her meeting with Counts, Wilkinson, and Beavers on April 22, 2022, to address the shortcomings her

supervisors perceived in her work, Watrous expressed reluctance to perform all of the maintenance duties expected of her and indicated that she would prefer to work solely with the operations department. ECF No. 29-1 at 13; Ex. 4, J.R. at 156 & 172; Ex. 2, J.R. at 77 (Watrous Dep. 106:12-107:21). Yet Watrous refused Beavers's proposal to reduce her position to part-time with reduced compensation. *Id.* at 14. Beavers also reported that Watrous "has a very toxic attitude and . . . is very hard to communicate with." Ex. 17 J.R. at 248.

Watrous alleges that AIRtec exaggerates the amount of work that she was reluctant to perform. According to Watrous, there is significant overlap between the Flight Ops and Maintenance duties, and she "largely performed these duties without an issue, except for the times Watrous needed to communicate with Guerra," which "could be done in 20 minutes." ECF No. 31-1; Ex. 16, J.R. at 230 (Counts Dep. 40:7-41:18). Watrous also noted that, in subsequent conversations with Human Resources personnel, she expressed a willingness to work with Guerra and support the maintenance department. ECF No. 31-1; Ex. 27, J.R. at 388. Watrous also points to Beavers' deposition, where she testified that she did not think it seemed Watrous was likely to be terminated on April 27, 2022 or April 29, 2022 (after the conversations with Human Resources). ECF No. 31-1; Ex. 22, J.R. at 304 (Beavers Dep. 176:15-178:11).[5]

Watrous has not established satisfactory work performance. There is ample evidence in the record that Watrous was not meeting her employer's legitimate expectations. Watrous did not dispute AIRtec's allegations regarding her absenteeism, untimeliness, and failure to comply with proper procedures. In her own deposition, Watrous admitted that she frequently left the hangar

---

[5] Beavers attested that on April 27, 2022, she did not think Watrous was likely to be terminated because they were "just trying to get [Watrous] to turn around" and on April 29, 2022, she did "not necessarily" think Watrous would be terminated because they were "still trying to get her on board." Ex. 22, J.R. at 304 (Beavers Dep. 176:15-178:11).

without prior approval, which required other employees to perform part of the job duties that she was hired to do, and that she was reluctant to perform a significant amount of her assigned tasks. Ex. 2, J.R. at 77 (Watrous Dep. 65:2-66:17). And Watrous has proffered no evidence, such as reviews, evaluations, feedback, or similar, that she was meeting AIRtec's legitimate employment expectations.[6] At the prima facie stage, the burden is on the plaintiff to show satisfactory job performance, and Watrous has not done so here.

AIRtec also argues that Watrous "fails to identify any comparable individual outside her protected class that was treated more favorably or differently than she was." ECF No. 29-1 at 19 n. 2. Watrous attempts to use Guerra as a comparator, alleging that Guerra "experienced no discipline for his alleged conduct, including leaving the door to the office unlocked after May 3, 2022." ECF No. 31-1. "[W]here a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination, the plaintiff must demonstrate that the comparator is similarly situated in all relevant aspects." *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708 (D. Md. 2023) (quoting *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (internal quotations omitted)). Guerra and Watrous's roles with respect to Logistics Office security were very different: Guerra is the only AIRtec employee with a personal key to the office because he is solely responsible for the security of the office. ECF No. 32 at 14. So it is not surprising that there are different expectations of Guerra compared with Watrous when it comes to securing the Logistics Office. Moreover, AIRtec alleges that Watrous was terminated due to inadequate performance, including absenteeism, untimeliness, failure to

---

[6] There is evidence from Watrous's husband, who was her supervisor in Flight Operations, that she was satisfactorily performing her Flight Operations duties. Ex. 24, J.R. 365. However, it is her Maintenance Operations performance, not her Flight Operations performance, that is at issue here.

comply with protocol, and being difficult to work with; she was not terminated merely for leaving the door to the logistics office unlocked. Watrous must identify a comparator who demonstrated similar performance deficiencies without being disciplined. She does not identify any such deficiencies in Guerra's work performance. Furthermore, after Watrous was terminated, she was replaced by a woman on a temporary basis on or around May 5, 2022, and then her position was permanently filled by another woman on June 13, 2022. ECF No. 29-1 at 15; Ex. 4, J.R. at 155 (Wilkinson Dep. 30:18-31:1). Although replacement by someone outside of the plaintiff's protected class is not always required to establish a prima facie case, it can be highly probative as to the existence of discriminatory intent. *See, e.g., Miles v. Dell, Inc.,* 429 F.3d 480, 487 (4th Cir. 2005; *Brown v. McLean*, 159 F.3d 159 F.3d 898, 905 (4th Cir. 1998); *Parker v. Children's Natl. Med. Ctr., Inc.*, No. 1:20-CV-03523-JRR, 2024 WL 943438, at *9 (D. Md. Mar. 4, 2024), aff'd, No. 24-1207, 2025 WL 1540954 (4th Cir. May 30, 2025). If AIRtec was motivated by discriminatory animus, it does not follow that it would have hired two members of Watrous's protected class to fill the position after her—both of whom likewise worked with Guerra and shared his office. Because Watrous has failed to identify a comparator who was treated more favorably than she was, and Watrous was replaced by another member of her protected class, Watrous fails to establish that she was treated differently from similarly-situated individuals outside of her protected class.

Watrous fails to make out a prima facie case of employment discrimination. AIRtec is therefore entitled to summary judgment on Counts I and IV.

### E.    Retaliation Claims

In Counts II and V, Watrous alleges that AIRtec retaliated against her for engaging in protected activity, in violation of the MFEPA and Title VII. ECF No. 8 ¶¶ 101-106 (MFEPA claim)

& 124-129 (Title VII claim). As protected activity, Watrous alleges that on March 1, 2022 and May 3, 2022, she "complained to her supervisors and human resources representatives about being subjected to differential treatment at the hands of her male supervisor." *Id.* She alleges that the temporal proximity between these complaints and her termination on May 4, 2022 creates a presumption that a causal connection exists between her protected activity and subsequent termination. *Id.*

"Title VII forbids . . . retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018). "MFEPA prohibits an employer from . . . retaliating 'against any of its employees" because that individual has either 'opposed any practice prohibited by [MFEPA]' or 'made a charge testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [MFEPA].'" *Hanke v. United Parcel Serv., Inc.*, No. JRR-23-2130, 2024 WL 3554973, at *4 (D. Md. July 26, 2024) (citing Md. Code, State Gov't § 20-506(f)).

Because Watrous does not present direct or indirect evidence of retaliation, she must proceed under the *McDonnell Douglas* burden-shifting framework. "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman*, 626 F.3d at 190. The elements of a prima facie claim of retaliation under the MFEPA are identical to those under Title VII. *Barreto v. SGT, Inc.*, 826 Fed. Appx. 267 (4th Cir. 2020).

"Protected activities" under Title VII include oppositional activities that are intended to bring attention to an employer's violations of Title VII or reasonable suspicion of such violations.

*See EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005); *Boyer-Liberto v. Fontainbleu Corp.*, 786 F.3d 264 (4th Cir. 2015).

AIRtec argues that Watrous cannot establish a prima facie case of retaliation because Watrous (1) did not engage in protected activity and (2) cannot establish a causal connection between any alleged protected activity and subsequent adverse employment actions. ECF No. 29-1 at 24.[7]

AIRtec alleges that the March 1, 2022 discussion "related to Guerra's failure to provide information to Watrous regarding an inventory system that Watrous did not know yet to exist" and notes that Watrous herself testified that she did not complain about harassment during this meeting. ECF No. 29-1 at 25. Watrous does not respond to AIRtec's argument that she did not complain about harassment during the March 1, 2022. I therefore find that there is no evidence that Watrous engaged in "protected activity" during the March 1, 2022 meeting under the MFEPA or Title VII.

AIRtec also argues that the May 3, 2022 email is not a "protected activity" because "no reasonable person would believe that Guerra requiring Watrous to lock a storeroom door containing millions of dollars of equipment that he is solely responsible for constitutes sexual harassment or hostile work environment." *Id.* at 25-26. And nothing in the email or Watrous's earlier communications to AIRtec suggest that Watrous's sex was relevant to her perceived harassment or hostile work environment. *Id.* Watrous responds by cataloging behavior by Guerra that made Watrous feel "harassed and demeaned," including "exclusion, non-cooperation, and non-communication." ECF No. 30 at 12.

---

[7] AIRtec also argues that Watrous cannot show that AIRtec's proffered legitimate reasons for terminating Watrous were pretext for retaliation. *Id.* at 27.

"[T]he employee's perception of a violation must be 'objectively reasonable' under the circumstances known to her." *Strothers*, 895 F.3d at 328 (quoting *Boyer Liberto*, 786 F.3d at 282). "To determine whether [the plaintiff] had a reasonable basis to oppose what she perceived as a hostile work environment, we examine the elements of a hostile environment claim in light of what she knew." *Id.* As discussed in greater detail in the following section, there was no basis for Watrous reasonably believe that Guerra's conduct was based on her sex, and thus no reasonable person would have believed that the Guerra's conduct violated Title VII or the MFEPA. The mere fact that there was conflict between Watrous, a woman, and Guerra, a man, does not automatically implicate either statute. *See, e.g., Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) ("An insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because the 'victim' of the remark happens to belong to a class protected by Title VII."). The May 3, 2022 email was not a "protected activity" because Watrous could not have reasonably believed that Guerra or AIRtec's conduct violated Title VII or the MFEPA.

Furthermore, Watrous falls short of her burden to show causation. An employer must have knowledge of protected activity for a plaintiff to prevail on a retaliation claim:

> [N]o causal connection can exist between an employee's protected activity and an employer's adverse action if the employer was unaware of the activity. An employer is aware of an employee's protected activity when he learns of an employee action that he understood or should have understood to be opposition against a Title VII violation. When determining whether the employer should have understood the nature of the employee's action, courts examine not just the employee's complaint but also the factual context that is known to the employer.

*Strothers*, 895 F.3d at 336 (internal citations omitted). Even if Watrous had engaged in a protected activity, AIRtec was not aware of it. The May 3, 2022 email made no reference to sexual harassment and the factual context did not put AIRtec on notice that Watrous's complaint related to a possible Title VII or MFEPA violation. The email subject line read "Need resolution for incredibly uncomfortable work environment." Ex. 20, J.R. at 256. In the email, Watrous

16

complained that Guerra 1) hardly spoke to her; 2) turned her desk to face the wall instead of finding an extension cord due to outlet placement; and 3) insisted that she lock the door when leaving the office. *Id.* She stated that Guerra's insistence that she lock the door was harassment, and that she could not "continue to work in the hostile environment created by [Guerra] in the logistics office." In her deposition, AIRtec's former Human Resources Director Kelly Beavers stated:

> I think she thought – I mean, I'm guessing she thought that [Guerra] was making it more difficult for her because she was a female versus just – I don't know. I mean, just from reading through all this, it felt like she was thinking that she was being harassed because she was a female, and that's not – [Guerra] treats everybody the same. Just because she's a woman and she singles that out doesn't mean that that's sexual harassment.

Ex. 22, J.R. at 303, Beavers Dep. 170:5-16. According to Watrous, Beavers' deposition testimony shows that AIRtec knew or should have known that Watrous intended to complain about her reasonable suspicion of a Title VII violation when she sent the May 3, 2022 email. But other than the fact that Watrous is a member of a protected class, AIRtec had no reason to believe, either based on the contents of the email or information known to them from the factual context, that Watrous was complaining of sexual harassment. Beavers' speculation during her deposition does not alter that.

This case is distinguishable from *Okoli v. Cty. of Baltimore*, cited by Watrous, where the defendant "should have known that [the plaintiff's] complaints of 'harassment' likely encompassed sexual harassment." 648 F. 3d 216, 224 (4th Cir. 2011). In that case, Okoli's supervisor propositioned her multiple times to have sex with him in a jacuzzi when they travelled for work; asked her what color her underwear was; forcibly kissed her; touched her legs under the table at professional meetings; ignored repeated requests to cease his unwanted advances; and fired her shortly after she filed complaints for "harassment" with several superiors. *Id.* The Court found that, "Okoli's description of 'unethical,' 'degrading and dehumanizing' conduct suggest severe

misbehavior related to her identity—not a mere workplace squabble. Moreover, based on his alleged conduct, [the supervisor] himself surely would have known that Okoli was complaining of sexual harassment." *Id.* at 224. Unlike in *Okoli*, neither the language in the email nor the context in which it was sent would have put AIRtec on notice that Watrous was engaging in protected activity.

Watrous has failed to make out a prima facie case of retaliation. AIRtec is entitled to summary judgment on Count II and Count VI.

### F.    Harassment or Hostile Work Environment Claims

Watrous originally brought harassment and hostile work environment claims under both the MFEPA (Count III) and Title VII (Count VI). In her Response to AIRtec's Motion, Watrous abandoned her harassment claim under Title VII. ECF No. 31-1 ("Defendant seeks summary judgment on all of Plaintiff's claims, including claims of harassment, hostile work environment brought under Title VII and the MFEPA (Count III and Count VI). Plaintiff will pursue her harassment claim under the MFEPA.").

"Title VII is violated when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Davis v. Kendall*, No. TJS-21-2503, 2022 WL 17668747, at *3 (D. Md. Dec. 14, 2022), *aff'd* No. 23-6149, 2024 WL 1230146 (4th Cir. Mar. 22, 2024) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)) (internal citations omitted). The *McDonnell Douglas* burden-shifting framework does not apply to hostile work environment claims. *See Geussous v. Fairview Prop. Invs., LLC*, 828 F.3d 208 (4th Cir. 2016) (applying the *McDonnell Douglas* framework to discrimination and retaliation claims, but not to hostile work environment claims). In order to sustain a hostile work environment claim under Title VII, a

plaintiff must prove that "(1) the harassment was unwelcome; (2) the harassment was based on [a status protected by Title VII]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

Watrous argues that her MFEPA claim should survive because, under the MFEPA, she does not need to meet the "severe and pervasive" standard required to sustain a hostile work environment claim under Title VII. ECF No. 31-1 at 28.

Because the MFEPA is "modeled on federal anti-discrimination legislation," Maryland courts largely apply federal precedent to employment discrimination claims brought under the MFEPA. *Doe v. Catholic Relief Servs.*, 484 Md. 640, 656 (2023) (quoting *Montrose Christian Sch. Corp. v. Walsh*, 363 Md. 565, 580 (2001)). However, where the MFEPA materially departs from the language of Title VII, the MFEPA is not read in lockstep with the federal statute. *Id.* at 657-658.

While the MFEPA originally mirrored the language in Title VII, in October 2022, the MFEPA was amended to clarify that harassment need not be severe or pervasive in all circumstances to be actionable. The amended definition of "harassment" states that "harassment" includes:

> (1) unwelcome and offensive conduct, which need not be severe or pervasive, when:
>> (I) the conduct is based on race, color, religion, ancestry, national origin, sex, age, marital status, sexual orientation, gender identity, disability, or military status; and
>> (II) 1. Submission to the conduct is made either explicitly or implicitly a term or condition of employment of an Individual;
>>> 2. submission to or rejection of the conduct is used as a basis for employment decisions affecting the Individual; or
>>> 3. *based on the totality of the circumstances, the conduct unreasonably creates a working environment that a reasonable person would perceive to be abusive or hostile*; and

(2) sexual harassment.

Md. State Gov't § 20-601 (h) (emphasis added). Therefore, to bring a harassment or hostile work environment claim under the MFEPA, it is sufficient to prove that the conduct creates an objectively abusive or hostile work environment. The elements of a harassment or hostile work environment claim under the MFEPA are otherwise the same as those under Title VII.

Watrous cites "communication issues" with Guerra, Guerra's unwillingness to work with her, Guerra moving her desk in the logistics office, and Guerra refusing to provide her with her own key to the logistics office as instances of harassment or hostile work environment attributable to AIRtec. ECF No. 31-1 at 4-7. Watrous alleges that this conduct was objectively and subjectively "unwelcome," and is therefore actionable under the state law. ECF No. 31-1 at 26-27. AIRtec alleges that "[a]t most, the conduct Watrous claims constitutes harassment amounts to a personality conflict between coworkers." ECF No. 29-1 at 26.

It is doubtful that the conduct Watrous alleged created a working environment that a reasonable person would perceive to be abusive or hostile, as required by the MFEPA. But even if Guerra did create such an environment, Watrous fails to meet her burden to prove that the alleged harassment was based on sex. As AIRtec points out in its Motion, "Watrous presents no evidence that Guerra's alleged harassment was sexual in nature, based on her sex, or otherwise because Watrous was a female." ECF No. 29-1 at 26. In her Response, Watrous again presents no evidence that the alleged harassment was perpetrated against her because of her sex. To prevail, Watrous must show that the alleged abuse would not have been perpetrated against her "but for" her membership of a protected classification. *See Causey*, 162 F.3d at 801. Watrous has failed to do so.

Because Watrous abandoned her Title VII claim as to Count VI and failed to show that the alleged harassment was based on her sex as to Counts III and VI, AIRtec is entitled to summary judgment as to Counts III and VI.

###    C.    Applicability of MFEPA to AIRtec's Conduct

Finally, AIRtec argues that the MFEPA does not apply to the conduct of AIRtec and its employees described in Watrous's complaint because all the alleged conduct occurred in a foreign country. ECF No. 2-1 at 30-31. AIRtec points to a provision of the MFEPA that excludes its application to "an employer with respect to the employment of aliens outside of the State." Md. Code Ann, Stat Gov. Art., Sect. 20-602. According to AIRtec, this provision precludes Watrous from bringing claims under the MFEPA arising from her employment for AIRtec in Panama.

The Court need not decide this issue. Even assuming that the MFEPA applies, the Court has found that AIRtec is entitled to summary judgment on all of Watrous's claims. Therefore, the question of whether the MFEPA applies to AIRtec's alleged foreign conduct is moot.

## III. Conclusion

For the reasons set forth above the Motion is **GRANTED**. Judgment will be entered in favor of AIRtec as to all claims.

A separate Order follows.


Date: August 28, 2025                                    _____/s/_____

                                                        Timothy J. Sullivan
                                                        Chief United States Magistrate Judge